UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERMAN MAURER,

    Plaintiff,                                               Civil Action No. 19-CV-12292

vs.                                                           HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

This matter is presently before the Court on cross motions for summary judgment [docket entries 13, 15]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

This social security disability case has a protracted procedural history. Plaintiff had a stroke in November 2002 and filed for disability insurance benefits sometime thereafter. *See Maurer v. Colvin*, No. 14-CV-10136, 2015 WL 6550065, at *1 n.1 (E.D. Mich. Oct. 29, 2015). "That application was denied in July 2006 based on an ALJ's conclusion that plaintiff had the residual functional capacity ('RFC') to work as a computer operator, a peripheral systems operator, or order clerk." *Id.* Plaintiff did not appeal that decision.

In 2011 plaintiff filed a second application for benefits, in which he claimed a disability onset date of April 2007, the onset date coinciding with the date when he was fired from his job as a taxi driver. *Id.* The ALJ denied that application in 2012 on the grounds that

plaintiff had the RFC to perform a wide range of light work,[1] including jobs as an information clerk, interviewer, and inspector. *Id.* at *2. Plaintiff appealed that decision to this Court. In 2015 the Court remanded the matter for further proceedings because the ALJ failed to incorporate any findings into his RFC evaluation regarding plaintiff's headaches, obesity, or medication side effects, and because the testimony of the vocational expert ("VE") "was so uncertain, tentative, confused, and equivocal" that it had no evidentiary value. *Id.* at *5.

After another hearing in June 2016, the ALJ denied the application on the grounds that plaintiff had the RFC to perform a limited range of light work.[2] Examples of jobs plaintiff could perform were said to be photocopy machine operator, routine clerk, and price marker. Plaintiff sued again, and the Court again remanded for further proceedings. *See Maurer v. Comm'r of Soc. Sec.*, No. 17-CV-10200 (E.D. Mich. June 30, 2017). The Court noted that the ALJ had again neglected to make any findings regarding plaintiff's headaches, and that he had

---

[1] The ALJ found that plaintiff had the RFC to perform

> a wide range of light work . . . that precludes: lifting and carrying more than 30 pounds occasionally or 20 pounds frequently; standing more than about 30 minutes at a time or a total of six hours of an eight-hour workday; walking more than one-quarter of a mile at a time or a total of two hours of an eight-hour workday; si[t]ting for more than about two hours at a time or six hours of an eight-hour workday; and more than occasional use of the left upper extremity for reaching vertically, reaching horizontally, and performing gross and fine manipulation activities. Additionally, due to a combination of pain and memory loss, the claimant is limited to unskilled work.

*Maurer*, 2015 WL 6550065, at *2.

[2] The ALJ found that plaintiff "had the residual functional capacity to perform light work . . . except he could sit 6 hours and stand/walk 2 hours in an 8-hour workday; in simple, routine, and repetitive tasks" (Tr. 448).

failed to provide an adequate explanation for rejecting plaintiff's hearing testimony. *Id*. at 4-6.

After another hearing in February 2018, the ALJ again denied the application, finding, as before, that plaintiff had the RFC to perform a limited range of light work (Tr. 754). He found that plaintiff could work as an information clerk, telephone survey worker, or price marker (Tr. 757). After plaintiff sued, the parties stipulated to remand the matter "for further administrative action, including a new decision applying all relevant regulations and Social Security Rulings." *Maurer v. Comm'r of Soc. Sec.*, No. 18-CV-11548 (E.D. Mich. Sept. 28, 2018) (docket entry 15).

Following this most recent remand, another hearing was held in April 2019 (Tr. 1017-53) and the ALJ denied the application in May 2019 (Tr. 999-1010). He found that during the relevant period plaintiff had the following severe impairments: "cognitive dysfunction status post cerebral vascular accident, hypertension, headaches, obesity, and degenerative disc disease" (Tr. 1002). The ALJ found that plaintiff could not perform his past skilled work as a computer database administrator (Tr. 1008), but that he had the RFC

> to perform light work . . . except that he could lift or carry 20 pounds occasionally and 10 pounds frequently. The claimant could sit for 6 hours, stand for 6 hours and walk for 6 hours. He could push/pull as much as he could lift/carry. The claimant was able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). In addition to normal breaks, the claimant would be off task less than 5 percent of time in an 8-hour workday.

(Tr. 1005). The ALJ found, based on VE testimony, that given plaintiff's age, education, and this RFC, plaintiff could work during the relevant period as a cashier, office clerk, or stock clerk (Tr. 1009). This became defendant's final decision when the Appeals Council denied plaintiff's request for review.

3

Under 42 U.S.C. § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec*., 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); *see also Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec*., 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs*., 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec*., 531 F. App'x 636, 640-41 (6th Cir. 2013).

Having reviewed the record carefully, including all of the medical evidence and hearing testimony, the Court finds that the ALJ's most recent decision in this matter is supported by substantial evidence. During the three-year relevant period (from the alleged disability onset date of April 2007 through March 2010, when his insured status expired), plaintiff obviously had a number of medical problems that affected his ability to work, most notably headaches and back pain. But for the reasons explained by the ALJ, the evidence supports the conclusion that plaintiff nonetheless retained the ability to perform a limited range of light work.

In his summary judgment motion, plaintiff focuses his argument on challenging the ALJ's reasons for finding that the record does not support his claim that he was unable to work because he suffered (and continues to suffer) chronic, severe headaches.[3] In this section of his decision, the ALJ stated:

> As for the . . . claim that he has had frequent or daily debilitating headaches that have precluded his ability to work since the occurrence of his stroke in 2002, the claims are inconsistent with the record and unconvincing for five reasons. First, this contradicts what he told a provider in 2004, two years after the stroke, where he denied any headaches normally (Exhibit BF1/10). Second, it is inconsistent with the lack of medical visits for headaches in the record before the date last insured, as he only had a couple of headache visits over the several years after the stroke prior to the date last insured, and these were attributed to a temporary side effect of a hypertension medication he was taking at the time (Exhibit B1F). Third, it is inconsistent with the lack of medications for headaches prior to the date last insured, as the record shows no headache medication before the 2010 date last insured, although he was taking medications for other things (Exhibit B4F/1-2); he was first prescribed Naprosyn for headache <u>after</u> the date last insured (Exhibit B1F1). Fourth, it is inconsistent with the reports from the medical visits he did have for other ailments both before the date last insured and later, because in most of his provider visits he did not mention headaches and he was generally observed as being not in acute

---

[3] Apparently plaintiff concedes that the evidence supports the ALJ's finding that he had the RFC to meet the exertional demands of light work. While plaintiff indicated that his back pain severely limited his ability to sit, stand, and walk (Tr. 255, 262, 468, 476-77), the ALJ noted that the objective findings regarding plaintiff's back have been minimal. X-rays in March 2008 showed "moderate L5-S1 disc space destruction" and "mild L4-5 disc space reduction" (Tr. 298). X-rays of plaintiff's lumbar spine in November 2011 showed "mild but worsening degenerative changes" (Tr. 353). Similar x-rays in 2013 and 2014 were likewise interpreted as showing "minimal" and "mild" degenerative changes (Tr. 1391, 1430-31). Examination of plaintiff's back in March and June 2013 found no abnormalities, no spasm, and negative straight leg raising (Tr. 1435, 1441, 1493). In 2011 plaintiff told his nurse practitioner that he had been experiencing back pain since the early 1970s and that "flare-ups" occurred every six months (Tr. (1496). The two "medical source statements" in the file indicate that plaintiff could sit, stand, and walk for more than eight hours per day (Tr. 400, 1276).

> distress, which overall is inconsistent with a claim of daily debilitating headaches. Fifth, it is inconsistent with the vocational history, including his return to work from 2015 to the present, and yet still claiming that he has ongoing frequent headaches (Hearing), which implies that the headaches are not preclusive of his ability to work. At the hearing, he stated that he works, but is limited in how long he can work and will turn down trucking jobs of more than 200-300 miles due to his various impairments (Hearing). It is noted, however, that he told his provider in January 2016 that he is on the road for extended periods of time (Exhibit B10F28), and again in January 2018 that he spends 12-hour periods driving (Exhibit B10F/251), which is inconsistent with the testimony. In most of his provider visits in the last several years, he again makes no mention of headaches, and even denies having headaches (Exhibit 10F/246/249/260), although in January 2016 he stated he has "occasional" headaches associated with driving long hours (Exhibit B10F/29). Likewise, he indicated to the psychological consultative examiner (Exhibit B6F) that he did not return to work after being laid off for many years because he was unable to find meaningful work and because he made very little driving a tax[i], which again is inconsistent with his claim of the reason instead being daily debilitating headaches since 2002. Overall, the record is inconsistent with the claimant's claims, and does not support more than occasional or mild headaches that do not preclude the ability to work.

(Tr. 1006-07).

Plaintiff criticizes the ALJ's first reason as being an incomplete paraphrasing of the cited medical record. The Court disagrees. In April 2004 plaintiff sought emergency room treatment for "chest heaviness" (Tr. 287). Under "review of systems," the hospital record of this ER visit states: "He denies any headache normally, although he does have some headache recently from the medication that was started" (Tr. 288). The record of this ER visit makes no other mention of plaintiff's headaches. The ALJ is correct that plaintiff's denial of "any headache normally" contradicts his hearing testimony that he has experienced headaches daily since his stroke in 2002 (Tr. 1031, 1187, 1189).

6

Plaintiff criticizes the ALJ's second and third reasons (lack of treatment and medications for headaches) on the grounds that he was uninsured during the relevant time period. Plaintiff testified that he had no health insurance from 2004 until November 2010 (Tr. 76, 1052). Defendant acknowledges that a lack of medical insurance must be considered as a possible explanation for lack of treatment, *see* Def.'s Br. at 9, but in this case plaintiff conceded that he had funds to pay for treatment out-of-pocket. In addition to seeking ER treatment for chest discomfort in April 2004, he obtained an ultrasound in March 2007 (Tr. 291), ER treatment following a car accident in March 2008 (Tr. 293), and ER treatment for cellulitis in September 2008 (Tr. 284). Plaintiff was also prescribed a number of medications during the relevant period, but none for headaches (Tr. 336). It was not unreasonable for the ALJ to doubt the severity of plaintiff's headaches given the nearly complete lack of complaints or treatment, including medication, during the relevant period, given that plaintiff apparently had the ability to obtain and pay for treatment if he had wished to do so.

Plaintiff criticizes the ALJ's fourth reason simply on the grounds that his "statements are that the debilitating fuzzy symptoms occur 3-4 times a month, not 'daily.'" Pl.'s Br. at 21. This argument is not sufficiently developed for the Court to consider. But as a matter of fact, plaintiff testified that he could not work during the relevant period because his headaches were "constant" (Tr. 468) and "pretty much continual" (Tr. 1031). There is nothing unreasonable in the ALJ's determination that this testimony is inconsistent with the lack of any supporting medical documentation during this period of time.

Plaintiff criticizes the ALJ's fifth reason on the grounds that since 2015 he has been able to work only part-time, and this does not demonstrate an ability to work full-time. He

7

also faults the ALJ for misunderstanding that his headaches are disabling because they impair his concentration, not necessarily because they occur frequently. The Court rejects these arguments. Certainly, an ability to engage in part-time work does not necessarily demonstrate an ability to engage in full-time work, but in this case plaintiff's ability to work at all casts doubt on the severity of his headaches during the relevant period, as plaintiff testified that his headaches are only somewhat better now as compared to then (Tr. 1186-89). In any event, the issue is not whether plaintiff can work now, but whether he could work before his insured status expired in March 2010.

The Court concludes that the ALJ's decision is supported by substantial evidence. Despite plaintiff's complaints of disabling back pain and headaches, the record supports the ALJ's decision that he had the RFC from April 2007 to March 2010 to perform a limited range of light work. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

    s/Bernard A. Friedman
    BERNARD A. FRIEDMAN
    SENIOR UNITED STATES DISTRICT JUDGE

Dated: May 10, 2020
       Detroit, Michigan